FILED

2018 MAR 30 PM 1: 35

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**CONNELL CROOMS,**

> **Plaintiff,**

vs.

Case No.: 3:18-cv-430-J-39PRK

**OFFICER C.D. PLAUGHER**, individually;
**OFFICER B.D. MCEWAN**, individually; **OFFICER
B.L. JESTER**, individually; **OFFICER F.G. WISE**,
individually; and **SHERIFF MIKE WILLIAMS**,
in his official capacity as Sheriff
of the City of Jacksonville, Florida,

> **Defendants.**

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Connell Crooms, brings this action seeking monetary damages, attorney's fees, and costs against Defendants and alleges the following:

1.     This is an action for damages, attorney's fees, and costs for the deprivation of Plaintiff's rights secured by the Fourth, First, and Fourteenth Amendment to the United States Constitution as well as claims under Florida Law.

### JURISDICTION AND VENUE

2.     Plaintiff invokes the jurisdiction of this court pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims herein. The court has supplemental jurisdiction as to the state law claims pursuant to 28 U.S.C. §1367.

3.     Venue in this district is proper pursuant to 28 U.S.C. §1391, in that the cause of action arose in this district.

## PARTIES

4.     Plaintiff, Connell Crooms, is a resident of Jacksonville, Duval County, Florida and a citizen of the United States. At all times relevant hereto, Plaintiff has been actively involved in progressive-leaning activities in the Jacksonville community, which have included organizing and attending numerous political rallies and protests. When Plaintiff was five years old, his family discovered that he was deaf. For Plaintiff's entire life, he has been unable to hear any sound without the assistance of a hearing aid or discern speech even with the assistance of a hearing aid. Plaintiff's native language is American Sign Language. However, after undergoing intensive speech therapy at the Florida School for the Deaf and Blind, Plaintiff is able to read lips and speak. Communicating in this way requires a great deal of concentration, however, and Plaintiff is not able to do so when under distress.

5.     Defendant, C.D. Plaugher, was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office. At all times relevant to this cause, Defendant Plaugher acted in conformity with the customs, practices, and policies of the Jacksonville Sheriff's Office and acted under the color of state law.

6.     Defendant, B.D. McEwan at all times relevant, a sworn member of the Jacksonville Sheriff's Office. At all times relevant to this cause, Defendant McEwan acted in conformity with the customs, practices, and policies of the Jacksonville Sheriff's Office and acted under the color of state law.

7.     Defendant, B.L. Jester was at all times relevant, a sworn member of the Jacksonville Sheriff's Office. At all times relevant to this cause, Defendant Jester acted in conformity with the customs, practices, and/or policies of the Jacksonville Sheriff's Office and acted under the color of state law.

8.      Defendant, F.G. Wise was at all times relevant, a sworn member of the Jacksonville Sheriff's Office. At all times relevant to this cause, Defendant Wise acted in conformity with the customs, practices, and/or policies of the Jacksonville Sheriff's Office and acted under color of state law.

9.      Defendant, Mike Williams, in his official capacity as Sheriff of the City of Jacksonville, Florida, was at all times relevant, responsible for the supervision, training, instruction, discipline, control, and conduct of police officers of the Jacksonville Sheriff's Office and made policy for the Jacksonville Sheriff's Office with respect to seizures and the use of force. At all times relevant, Defendant Williams had the power, right, and duty to train and control his officers, agents, and employees to conform to the Constitution of the United States and to ensure that all orders, rules, instructions, and regulations promulgated for the Jacksonville Sheriff's Office were consistent with the Constitution of the United States. At all times relevant, Sheriff Williams' agents and employees acted under color of state of law.

## FACTUAL ALLEGATIONS

10.     On April 4, 2017 at around 5:45 p.m., a group of individuals ("the Protestors"), gathered at Hemming Park in downtown Jacksonville, Florida to engage in a peaceful protest of the United States' bombing of Syria.

11.     Shortly after the protest began, a separate group of individuals arrived at Hemming Park in support of President Trump and the bombing (the "Counter-Protestors").

12.     A number of JSO officers had already arrived to attempt to ensure a peaceable protest. All in all, the size of the crowd at the protest was relatively small, numbering about thirty to forty people in total.

13.     Among the Counter-Protestors was an individual by the name of William "Gary" Snow ("Snow"), a Trump supporter who frequently attends progressive-leaning events across the State of Florida and his former home state of Illinois. Snow attends these events to disrupt, provoke, and harass individuals attending the assemblies. Indeed, after the events described herein, Snow was arrested by the Manatee County Sheriff's Office and charged with inciting a riot when he disrupted a group of individuals protesting a confederate monument in Bradenton, Florida.

14.     During the Syria protest of April 4, 2017, the Protestors and Counter Protestors generally kept to separate areas of the park. However, Snow walked directly among the Protestors. Snow held his cellphone to the Protestors' faces, filming them from up close while he taunted and provoked them. Snow also carried large flag that read "TRUMP: Make America Great Again." Snow used the large flag to hit Protestors "on accident" by turning from side to side with the flag slung across his shoulder.

15.     The Protestors repeatedly requested JSO officers to remove Snow from their group, but no officer complied with the requests.

16.     At approximately 6:15 p.m., Plaintiff arrived to join the Protestors. Plaintiff, along with other organizers of the protest, stood on a small stage at Hemming Park where they spoke to the crowd regarding the bombing of Syria and other issues using a microphone. Plaintiff was selected to speak about the United States' involvement in African and Latin countries, as well as racial profiling in the United States.

17.     In his speech, Plaintiff criticized JSO's treatment of African-American individuals. Although shouting, "fuck the police," to the crowd, Plaintiff did not advocate violence or single out any police officers or other individuals in the crowd.

18.     After Plaintiff made these statements, several onlookers at the Protest overheard a JSO officer at the scene tell his colleagues, "I'm gonna deck that guy in the face before the night is over."

19.     Snow, without invitation, stepped on to the stage with the Protestors and interrupted Plaintiff's speech by shouting into a microphone of his own.

20.     Plaintiff and the other Protestors ignored Snow and began a chant to urge the United States to leave the Middle East.

21.     Shortly thereafter, Snow stepped away from the speakers and initiated an animated argument with another Protestor behind the stage.

22.     While Plaintiff did not know the individual to whom Snow was speaking, it appeared to Plaintiff that Snow was the aggressor in the confrontation. Plaintiff stepped off the stage and placed himself between Snow and the Protestor, stretching his arms out in attempt to prevent a fight.

23.     Snow then turned around and paced quickly toward another Protestor, who was one of Plaintiff's friends.

24.     Plaintiff, in turn, ran ahead of Snow to try to place himself between Snow and the other Protestor.

25.     Defendant Plaugher then stepped between Plaintiff and Snow.

26.     Snow swung his arm over Defendant Plaugher's shoulder, pushing his hand in Plaintiff's face and sticking out his middle finger.

27.     Despite Snow instigating the violence, Defendants Plaugher, McEwan, and Jester grabbed Plaintiff from behind.

28.     Defendant Wise claimed in his arrest report that Defendant Plaugher ordered Plaintiff to stop resisting, stop fighting, and put his hands behind his back.

29.     However, Plaintiff was complying with any commands.

30.     An onlooker who knew Plaintiff pleaded to the officers, "Let him go! Let him go! He's deaf!" multiple times. But the officers ignored these pleas, proceeded to throw Plaintiff to the ground, and beat him.

31.     Specifically, once Plaintiff was on the ground, Defendant McEwan grabbed Plaintiff's hand out from under Plaintiff. Rather than secure Plaintiff by placing his hand behind his back, Defendant McEwan let go of Plaintiff's hand and punched Plaintiff in the face.

32.     Defendant McEwan then repeatedly punched Plaintiff in his back, stomach, and ribs. While Defendants Plaugher and Jester held Plaintiff down.

33.     Defendant McEwan also pressed a Taser to Plaintiff's back and pulled the trigger.

34.     The Defendants then dragged Plaintiff to Defendant Wise's patrol car.

35.     Defendant Wise placed Plaintiff under arrest for inciting a riot and resisting arrest.

36.     Plaintiff was then taken to UF Shands Hospital for treatment of his injuries during the beating, which caused him to lose consciousness.

37.     While Defendants Plaugher, McEwan, and Jester were beating and arresting Plaintiff, JSO arrested five other Protestors, including the protest's organizer, on charges that included inciting a riot. None of the Protestors' conduct met the definition for inciting a riot under Florida law, which requires the words used by the defendant to be such that they "advocate violence and tend to incite an immediate breach of the peace." *See State v. Beasley*, 317 So.2d 750 (Fla. 1975).

38.     Snow, who instigated the fight and who Sheriff Mike Williams later stated: "clearly was a catalyst" for the violence that occurred that day, was not arrested or charged by defendant Wise or any of the other JSO officers.

39.     Rather, Snow was permitted to stand over Plaintiff and film Plaintiff with a camera-phone while JSO officers beat Plaintiff to the point of unconsciousness.

40.     Unlike the Protestors' speech, Snow's harassment of the Protestors *did* violate Florida law. *See* § 871.01 Fla. Stat. (2017) (stating that it is a second-degree misdemeanor to "willfully interrupt [] or disturb [] any assembly of people met. . . for any lawful purpose. . .").

41.     Ultimately, the State Attorney declined to pursue prosecution of Plaintiff. No charges of any form were ever brought against Snow.

42.     The use of force against Plaintiff is a part of a longstanding practice of JSO to use force against individuals who are not resisting.

43.     In December 2004, a member of the Jacksonville Sheriff's Office slammed Sammy Lee Evans to the ground. Mr. Evans hit his head on the ground as he was slammed by the officer and this resulted in Mr. Evans' death. Mr. Evans was not resisting the arrest, which was for open container of alcohol.

44.     In January 2006, members of the Jacksonville Sheriff's Office broke the right jaw of Bryan Barnes when effectuating his arrest. The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division). There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011. This complaint and accompanying investigation was made

four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled. The JSO Internal Affairs Unit concluded as follows relating to Mr. Barnes' incident: "that charge of EXCESSIVE FORCE against Police Lieutenant R. W. Beltz #7862 and Police Officer C. M. Weippert # 7829 be classified as NOT SUSTAINED."

45.    In January 2006, a member of the Jacksonville Sheriff's Office kneed Ronal Ferrera in the face three times while Ferrera was handcuffed.

46.    In October 2007, two members of the Jacksonville Sheriff's Office, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail. At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog-tied."

47.    In January 2008, a member of the Jacksonville Sheriff's Office broke the jaw of Larue Perkins by slamming him to the pavement of a parking lot. At the time, Perkins was complying with the officer's directive to leave the parking area. Perkins was also falsely arrested after having his jaw broken.  Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident. On January 21, 2011, almost three years after the incident, the JSO Internal Affairs Unit received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins. The subject matter of the complaint was the JSO officer's excessive use of force against Perkins. The in-house complaint was then investigated by the JSO Internal Affairs Unit which concluded that "the charge of Excessive Force against Police Officer R. J. Tolen #5597 be classified as NOT SUSTAINED."

48.    In September 2008, a member of the Jacksonville Sheriff's Office dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head,

resulting in paralysis to Mr. Lunsford. The officer did so despite Lunsford's prior warning to the officer that Lunsford had 4 screws and a plate in his neck. *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMH-MCR (M.D. Fla. Jacksonville Division). Upon information and belief, the incident was referred to JSO Internal Affairs and no disciplinary action was taken against the officer involved.

49.     In May 2010, a member of the Jacksonville Sheriff's Office fractured multiple facial bones of David Kemp when the officer violently struck Mr. Kemp as he laid on the ground in compliance with the officer's commands to do so. *See Kemp v. Rutherford et. al.,* Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division). Despite Sheriff Rutherford's actual notice of Mr. Kemp's incident because of the federal lawsuit filed against him, Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

50.     In March 2012, members of the Jacksonville Sheriff's Office questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him and effectuate his false arrest, injuring Mr. Fowler in the process. The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately dismissed. The JSO members involved were not disciplined or reprimanded for their action against Mr. Fowler.

51.     In June 2013, a member of the Jacksonville Sheriff's Office violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident. Mr. Slade was merely asking the officer when his insurance information would be taken following an accident when he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012). The charges against Mr. Slade were dismissed. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

52.     On November 12, 2014, at the Duval County Pretrial Detention Facility, a member of the Jacksonville Sheriff's Office violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed. The use of force knocked Mr. Ezell unconscious and resulted n Mr. Ezell's hospitalization. At the time of the incident, Mr. Ezell was a minor. None of the officers involved in the use of force were disciplined or reprimanded.

<div align="center">

**COUNT I**
**UNREASONABLE SEARCH and SEIZURE: EXCESSIVE FORCE**
**(Defendant McEwan)**

</div>

53.     Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

54.     Defendant McEwan's actions in slamming Plaintiff into the ground, striking Plaintiff in the face and ribs while he was completely restrained, and driving a Taser into Plaintiff's back constituted an unreasonable seizure under the Fourth and Fourteenth Amendment of the United States Constitution.

55.     The acts and omissions above were undertaken with Defendant McEwan's willful, wanton, callous and knowing disregard of the clearly established rights of Plaintiff under the law to be free from unreasonable searches and seizures.

56.    Defendants McEwan, Plaugher, and Jester acted in concert to apply excessive force to Plaintiff in that Defendant Plaugher and Jester held Plaintiff on the ground while Defendant McEwan struck Plaintiff in the face multiple times.

57.    As a direct and proximate result of Defendant McEwan's seizure, Plaintiff suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, Connell Crooms, demands judgment against Defendant Officer McEwan, individually, for:

(a)    actual and compensatory damages;

(b)    punitive damages;

(c)    an award of attorney's fees and costs; and

(d)    any other relief this Court deems just and proper.

<div align="center">

**COUNT II**
**UNREASONABLE SEARCH and SEIZURE: EXCESSIVE FORCE**
**(Defendant Plaugher)**

</div>

58.    Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

59.    Defendant Plaugher's actions in slamming Plaintiff into the ground, and holding Plaintiff down while JSO officers beat Plaintiff constituted an unreasonable seizure under the Fourth and Fourteenth Amendment of the United States Constitution.

60.    The acts and omissions above were undertaken with Defendant Plaugher's willful, wanton, callous and knowing disregard of the clearly established rights of Plaintiff under the law to be free from unreasonable searches and seizures.

61.     Defendants McEwan, Plaugher, and Jester acted in concert to apply excessive force to Plaintiff in that Defendant Plaugher and Jester held Plaintiff on the ground while Defendant McEwan struck Plaintiff in the face multiple times.

62.     As a direct and proximate result of Defendant Plaugher's seizure, Plaintiff suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, Connell Crooms, demands judgment against Defendant Officer Plaugher, individually, for:

(a)     actual and compensatory damages;

(b)     punitive damages;

(c)     an award of attorney's fees and costs; and

(d)     any other relief this Court deems just and proper.

### COUNT III
### UNREASONABLE SEARCH and SEIZURE: EXCESSIVE FORCE
### (Defendant Jester)

63.     Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

64.     Defendant Jester's actions in slamming Plaintiff into the ground, and holding Plaintiff down while JSO officers beat Plaintiff constituted an unreasonable seizure under the Fourth and Fourteenth Amendment of the United States Constitution.

65.     The acts and omissions above were undertaken with Defendant Jester's willful, wanton, callous and knowing disregard of the clearly established rights of Plaintiff under the law to be free from unreasonable searches and seizures.

66.     Defendants McEwan, Plaugher, and Jester acted in concert to apply excessive force to Plaintiff in that Defendant Plaugher and Jester held Plaintiff on the ground while Defendant McEwan struck Plaintiff in the face multiple times.

67.     As a direct and proximate result of Defendant Jester's seizure, Plaintiff suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, Connell Crooms, demands judgment against Defendant Officer Jester, individually, for:

(a)     actual and compensatory damages;

(b)     punitive damages;

(c)     an award of attorney's fees and costs; and

(d)     any other relief this Court deems just and proper.

### COUNT IV
### MUNICIPAL LIABILITY
### (Defendant Williams)

68.     Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

69.     Defendant Williams, in his official capacity as Sheriff of the City of Jacksonville, his agents and employees, acting within their authority and under color of state law, instituted and followed practices, customs, and policies which directly resulted in use of excessive force against Plaintiff, which were the moving force causing his injuries and is actionable under 42 U.S.C. §1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution. The Sheriff's Office has a widespread custom and practice of using excessive force, and by failing to discipline its officers for the use of excessive force against Plaintiff, Defendant Williams has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom,

or policy. Alternatively, the officers acting on the scene were the final policy makers for the Sheriff's Office, as their decisions were not immediately or effectively reviewable.

70.     As a direct and proximate result of the willful and deliberate action or inaction of the Sheriff's Office, Plaintiff has suffered damages, including, but not limited to, severe pain and suffering, physical injuries, and severe emotional and psychological distress.

WHEREFORE, Plaintiff, Connell Crooms, demands judgments against Defendant, Sheriff Williams, in his official capacity as Sheriff for the City of Jacksonville, for:

(a)     actual and compensatory damages;

(b)     an award of attorney's fees and costs; and

(c)     any other relief this Court deems just and proper.

## COUNT V
## 42 U.S.C. § 1983 FIRST AMENDMENT RETALIATION
### (Defendants Wise, Plaugher, and McEwan)

71.     Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

72.     Plaintiff engaged in constitutionally protected speech by speaking out against the United States' involvement at Syria, JSO's mistreatment of African-American individuals, and saying "fuck the police."

73.     Defendant Wise retaliated against Plaintiff by arresting him, while the instigator of the affray, Snow, was never arrested or charged. Defendants Plaugher, McEwan, and Jester retaliated against Plaintiff by holding him down and beating him prior to his arrest.

74.     Plaintiff's critical speech of JSO, made moments before the arrest occurred, directly caused Defendants' conduct.

WHEREFORE, Plaintiff, Connell Crooms, demands judgment against Defendants Wise, Plaugher, and McEwan for:

(a)     actual and compensatory damages;

(b)     punitive damages;

(c)     an award of attorney's fees and costs; and

(d)     any other relief this Court deems just and proper.

### COUNT VI
### STATE LAW CLAIM: BATTERY
### (Defendant Williams)

75.     Paragraphs 1 through 52 above are realleged and incorporated by reference herein.

76.     Plaintiff has satisfied all conditions precedent to bringing this action as required pursuant to §786.28, Fla. Stat. (2014) and §§112.201-112.205, Jacksonville Ordinance Code.

77.     Defendants McEwan, Plaugher, and Jester intentionally struck Plaintiff against his will, without legal justification.

78.     Sheriff Williams, having given his officers the authority to use force against Plaintiff, is liable for abuse of such authority.

79.     Plaintiff, as a result of Sheriff Williams' agents' battery and abuse of their authority, suffered severe pain and suffering, physical injuries, mental anguish and emotional distress.

WHEREFORE, Plaintiff, Connell Crooms, demands judgments against Sheriff Williams in his official capacity as Sheriff for the City of Jacksonville, for:

(a)     actual and compensatory damages;

(b)     costs; and

(c)     any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Connell Crooms hereby demands trial by jury on all issues so triable.


DATED this ___30th___ day of March 2018.

<div style="margin-left:40%">

Respectfully submitted,


_Jesse_

Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.:  118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:     (904) 356-9661
Facsimile:     (904) 356-9667
Email:         sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

</div>

lr[crooms.connell.complaint]