UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CONNEL CROOMS,

        Plaintiff,

CASE NO.: 3:18-cv-430-BJD-JRK

v.

**PARTIALLY DISPOSITIVE MOTION**

OFFICER C.D. PLAUGHER, individually,
OFFICER B.D. Mc EWAN, individually,
OFFICER B.J. LESTER, individually,
OFFICER F.G. WISE, individually, and
SHERIFF MIKE WILLIAMS, in his official
capacity as sheriff of the City of Jacksonville,
Florida,

        Defendants.
_____/

**DEFENDANTS WISE, PLAUGHER AND
McEWAN'S MOTION TO DISMISS COUNT V OF THE
COMPLAINT WITH PREJUDICE WITH MEMORANDUM OF LAW**

COMES NOW, the Defendants Wise, Plaugher and McEwan ("Officers"), by and through the undersigned attorney, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and hereby move to dismiss Count V of the Plaintiff's Complaint (Doc. 1), the claim for First Amendment Retaliation, with prejudice, for failure to state a claim upon which relief can be granted. In support therefor, the Officers state:

**Factual Basis**

According to the Complaint,[1] a group of thirty to forty individuals gathered on April 4, 2017 at Hemming Plaza in Jacksonville, Florida to protest the United States' bombing of Syria.

---

[1] The Officers dispute the facts as alleged in the Complaint but understand that for the purposes of ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. Pro., the District Court must accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012).

Doc. 1, ¶¶ 10, 12. Shortly thereafter, a group of counter-protesters arrived, including Gary Snow, an individual who has engaged in counter-protesting progressive events in Florida and Illinois. *Id*. at ¶ 11, 13. Although the protesters and counter-protesters generally remained separate, Snow walked among the protesters, engaged in disruptive behavior and acted as a general nuisance. *Id*. at ¶ 14-15. When Crooms arrived to join the protesters, he stood on a small stage and addressed the crowd, criticizing the Jacksonville Sheriff's Office's treatment of African-Americans and shouted, "fuck the police." *Id*. at ¶ 16-17. The Complaint alleges that in response to the Crooms' statements, a random officer stated to other officers, "I'm gonna deck that guy in the face before the night is over." *Id*. at ¶ 18.

The Complaint continues by describing the confrontation between Snow, who stepped on stage and interrupted Crooms' speech, and another protester, and ultimately Crooms himself. *Id*. at ¶¶ 19-22.  When Crooms saw Snow walk toward Crooms' friend, a fellow protester, Crooms ran and placed himself in front of Snow. *Id*. at ¶¶ 23-24. At that point, Plaugher stepped between Crooms and Snow, but Snow reached over Plaugher's shoulder, "pushing his hand in [Crooms'] face and sticking out his middle finger." *Id*. at ¶¶ 24-25. The Complaint then describes Plaugher, McEwan, and Jester grabbing Crooms "from behind," and "proceed[ing] to throw [Crooms] to the ground, and beat him." *Id*. at ¶¶ 27-30. The Complaint also describes how Snow filmed the interactions between Crooms and the Defendant Officers. *Id*. at ¶ 39.

## **Argument**

The federal claim for First Amendment Retaliation against the Officer Defendants, under 42 U.S.C. § 1983, is due to be dismissed because the Officers violated no rights guaranteed to Crooms under the United States Constitution.  There is no dispute that Crooms enjoyed rights under the First Amendment to peacefully attend a protest rally, speak in opposition to

government policies in the Middle East and publicly speak disparagingly about police officers, as long as his words did not incite violence. However, even construing the facts as alleged by Crooms in the light most favorable to him, the use of force against him and his ultimate arrest cannot be construed as being caused or motivated by his speech. Without identifying a causal link between the adverse conduct, the use of force and his arrest, and his protected speech, Crooms fails to state a cause of action for First Amendment Retaliation. Without alleging a constitutional violation, the Officer Defendants are protected by qualified immunity from claims brought against them individually.

## I. Motion to Dismiss Standard

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that will "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Rule 8(a)(2), Fed. R. Civ. P.). To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pursuant to the traditional view, the District Court may only grant a Rule 12(b)(6) motion to dismiss where it has been demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim to relief. *Conley*, 355 U.S. at 45-46. However, the Supreme Court has since fine-tuned the standard to reflect that the dismissal standard was one of plausibility under which a complaint must contain enough facts to state a claim that raises the "right to relief above the speculative level," or it will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In *Iqbal*, the Court further elaborated on its opinion in *Twombly*, succinctly stating:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678 (internal citations omitted). The Court explained that the plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the factual basis for a complaint is "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." *Id*. Accordingly, "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim, should be rejected as "conclusory and [are] not entitled to be assumed true." *Id.* at 679 (internal citations and quotations omitted); *see also, S.D. v. St. Johns County School Dist.*, 22 Fla. L.Weekly Fed. D7, 2009 WL 2381287 *1-2 (M.D.Fla.).

Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive issue of law. *Day v. Taylor*, 400 F. 3d 1272, 1275 (11th Cir. 2005). Additionally, where the facts alleged are conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, the complaint may be subject to dismissal. *Davila v. Delta Airlines, Inc.*, 326 F. 3d 1183 (11th Cir. 2003). Dismissal is warranted if, assuming the truth of the factual

allegations of the plaintiff's Complaint, there is a dispositive legal issue that precludes relief. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## II.     Qualified Immunity Generally

Although the Officer Defendants do not concede the allegations in the Complaint to be the actual facts, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Id.* at 323. However, a complaint may "be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages provided his or her conduct does not violate clearly established federal or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit, rather than a mere defense to liability" and it is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). The Supreme Court of the United States has rejected the argument that qualified immunity cannot be granted before discovery and stated that "qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635 (1987). The driving force behind the creation of the qualified immunity

doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 640, n. 2.

When a trial court must determine whether a defendant may benefit from qualified immunity, the Supreme Court has in the past mandated that the trial court must first determine whether the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001). Once that has been determined, only then does the analysis take the next step to determine whether the defendant violated clearly established law at the time of the alleged misconduct. *Id.* The Supreme Court, however, reconsidered this rigid approach and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223 (2009). Lower courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Id*.

## III.   Count V Does Not Establish a Constitutional Violation

As a threshold matter, the Officers were acting within their discretionary authority at the time of the events in question. Thus, to overcome their entitlement to qualified immunity, Crooms must allege that the Officers violated constitutional rights of which a reasonable person should have known. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002).

To state a retaliation claim in the Eleventh Circuit, a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F. 3d 1247, 1250 (11th Cir. 2005). In regard to the second element, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from

the exercise of First Amendment rights. *Id.* at 1254. In order to establish the third element, the causal connection, the plaintiff must allege and show that the defendant was subjectively motivated to take the adverse action because of the protected speech. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). The plaintiff must show that the defendant had "actual knowledge of the plaintiffs' protected speech, which can be established by circumstantial evidence." *Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles*, 691 F. App'x 584, 591 (11th Cir. 2017). Crooms cannot show the Officers had actual knowledge of his speech.

Crooms' Complaint speaks volumes as much for what is left out of the facts, as for what was placed in. The Complaint does not state, nor does it attach any documents or written instruments that would state in clear terms, whether the Officers actually heard Crooms making his speech. The Officers' proximity to the stage while Crooms was speaking is not explained, and the only reference to any police officer hearing Crooms is at paragraph 18, where it states, "several onlookers at the Protest overheard a JSO officer at the scene tell his colleagues, 'I'm gonna deck that guy in the face before the night is over.'" The Complaint does not identify who heard the statement, who the officer was making the statement, or who the "colleagues" were. We must assume that none of the Officers made the statement or were among the "colleagues," or Crooms would have so alleged.

Crooms attempts to establish the Officers' knowledge of his speech through circumstantial evidence of the Officers' lack of enforcement against Snow for Snow's activities, but the facts are not sufficient. There is no indication that the information about Snow's history of counter-protesting[2] was known to the Officers at the time and being a nuisance at a protest (taunting protesters, recording protesters with a cell phone, etc…) is not a violation of the law.

---

[2] Complaint, paragraph 13.

Moreover, Crooms' description of the events between Snow interrupting his speech and his altercation with the Officers, fails to describe any facts that would indicate the Officers heard or acknowledged Crooms' speech. Paragraphs 27 and 38 refer to the "violence" of that day, including a reference to a "fight" having been instigated by Snow in paragraph 38, however the details of Crooms' and the protesters' actions that resulted in their arrests are glaringly absent from the Complaint.

Crooms asserts at paragraph 74 that his derogatory comments about the Jacksonville Sheriff's Office "directly caused [the Officers'] conduct," however the Complaint is devoid of any direct evidence. The reader is left to speculate or assume that, 1) the Officers must have heard the comments; 2) the Officers were offended by the comments; and 3) Plaugher and McEwan were motivated to use physical force in the absence of any objectively reasonable purpose, based on the comments. Such speculation is improper under the law. Crooms is required under Rule 8 to draft a complaint that contains enough facts to state a claim that raises the "right to relief above the speculative level." *Twombly*, 550 U.S. at 555. With the references to violence and fighting, one could just as easily speculate that the Officers were taking action to quell a disturbance and used the force necessary to stop an escalating situation. The Eleventh Circuit has described circumstantial evidence as evidence of "other facts and circumstances from which the jury may infer that the fact being asserted does or does not exist." *United States v. Henderson*, 693 F.2d 1028, 1031 (11th Cir. 1982). Crooms is presuming the Officers' subjective motivation at that moment entirely from the absence of law enforcement action against Snow.

More specifically, Crooms' claim for First Amendment Retaliation against Wise is based on the fact that Wise was the arresting officer.[3] Crooms has not accused Wise of using any force

---

[3] See Complaint, ¶ 73, "Defendant Wise retaliated against Plaintiff by arresting him[.]"

against him, but neither has he leveled a claim for false arrest against Wise. For such a retaliation claim to stand, the retaliatory arrest must have been made without actual probable cause, or even arguable probable cause. In the Eleventh Circuit, arguable probable cause to arrest defeats not only Fourth Amendment claims for false arrest, but also First Amendment claims stemming from the arrest. *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). The Complaint lacks facts supporting a retaliatory arrest for Crooms' speech and is devoid of allegations specifically supporting a claim for false arrest.

**Conclusion**

The Officers conducted themselves professionally in a dangerous and dynamic situation. Crooms has not alleged facts that would support retaliatory motive to show causation, because none exist, circumstantial or otherwise. As Crooms has not sufficiently alleged all of the elements of a claim for First Amendment Retaliation, there is no constitutional violation apparent within the four corners of the complaint, and the Officers are entitled to qualified immunity.

WHEREFORE, the Officers respectfully move this Honorable Court to dismiss Count V of the Complaint.

Respectfully submitted,
ROBERT D. KLAUSNER
Florida Bar No. 244082
PAUL A. DARAGJATI
Florida Bar No. 713813
KLAUSNER, KAUFMAN,
JENSEN & LEVINSON, P.A.
7080 N.W. 4th Street
Plantation, Florida 33317
Telephone:   (954) 916-1202
Fax:             (954) 916-1232

By: /s/ **Paul A. Daragjati**
Paul A. Daragjati
*Counsel for Defendants*

Page **9** of **11**

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on Tuesday, May 08, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

                */s/ Paul A. Daragjati*
                *Counsel for Defendants*