UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CONNELL CROOMS,

    Plaintiff,

v.                                                 Case No. 3:18-cv-430-J-39JRK

C. D. PLAUGHER, Officer; individually,
B. D. MCEWAN, Officer; individually, B.
L. JESTER, Officer; individually, F. G.
WISE, Officer; individually, and MIKE
WILLIAMS, in his official capacity as
Sheriff of the City of Jacksonville,
Florida,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendants Wise, Plaugher, and McEwan's Motion to Dismiss Count V of the Complaint with Prejudice with Memorandum of Law (Doc. 10; Motion), and Plaintiff's Response to the Motion to Dismiss (Doc. 14; Opposition).

Plaintiff, Connell Crooms ("Plaintiff") initiated this action on March 30, 2018, by filing the six-count Complaint (Doc. 1) against the following Defendants: (1) C. D. Plaugher, individually ("Plaugher"); (2) B. D. McEwan, individually ("McEwan"); (3) B. L. Jester, individually ("Jester"); (4) F. G. Wise, individually ("Wise"); and (5) Mike Williams, in his official capacity as Sheriff of the City of Jacksonville, Florida.¹ Compl. ¶¶ 5-9. Count

---

¹ Plaintiff's claims against Defendant Mike Williams in his official capacity as the Sheriff of the City of Jacksonville, Florida are treated as claims against the City of Jacksonville, Florida. See Ermini v. Scott, No. 2:15-CV-701-FTM-99CM, 2017 WL 1251304, at *19 (M.D. Fla. Apr. 5, 2017) ("A claim against a Florida county sheriff in his official capacity is considered a claim against the

V is a 42 U.S.C. § 1983 First Amendment Retaliation claim against Defendants McEwan, Plaugher, and Wise. Id. ¶¶ 71-74. The case involves an incident that occurred on April 4, 2017 between Plaintiff and Defendant officers in Hemming Park in downtown Jacksonville during protests for and against the United States' bombing of Syria. See id. ¶¶ 10-11.

I. **Standard of Review**

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure ("Rule(s)"), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, the court must take the complaint's allegations as true and construe them in the light most favorable to the plaintiff. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008). While a court is required to accept well-pleaded facts as true at this stage, it is not required to accept the plaintiff's legal conclusions. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012). It is insufficient for a plaintiff's complaint to put forth merely labels, conclusions, and a formulaic recitation of the elements of the cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a complaint's factual allegations need not be detailed, the complaint must still allege sufficient facts to render the claim plausible on its face. Id. at 570. "'The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Moore v. Grady Mem'l Hosp. Corp., 834 F.3d 1168, 1171 (11th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads

---

county he represents."); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (finding that where "the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, Monroe County."); Geidel v. City of Bradenton Beach, 56 F. Supp. 2d 1359, 1369–70 (M.D. Fla. 1999) (deciding that because the plaintiffs sued the defendants in their official capacities, "the true desired [d]efendant . . . is the Officers' employer, the City of Bradenton Beach").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Moreover, "[a] complaint may 'be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'" Wall-DeSousa v. Fla. Dep't of Highway Safety & Motor Vehicles, 691 F. App'x 584, 589 (11th Cir. 2017) (quoting Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984), on reh'g, 764 F.2d 1400 (11th Cir. 1985)).

## II. Background

Plaintiff is a resident of Jacksonville, Florida who has been actively involved in progressive-leaning activities including political rallies and protests. Compl. ¶ 4. Plaintiff's native language is American Sign Language as he is deaf and unable to hear any sound without the assistance of hearing aids. Id. However, after undergoing training at the Florida School for the Deaf and Blind, Plaintiff can read lips and speak. Id.

On April 4, 2017, at approximately 5:45 p.m., a group of individuals (the "Protesters") gathered in Hemming Park to engage in a peaceful protest of the United States' bombing of Syria. Id. ¶ 10. Shortly after the protest began, another group of individuals (the "Counter-Protesters") arrived at Hemming Park in support of President Donald Trump and the bombing. Id. ¶ 11. Several Officers from the Jacksonville Sheriff's Office ("JSO") also arrived in Hemming Park to ensure a peaceful protest. Id. ¶ 12. In total, there were approximately 30 to 40 Protesters and Counter-Protesters. Id. Among the Counter-Protesters was Gary Snow, who often participated in "progressive-leaning events across the State of Florida and his former home [S]tate of Illinois." Id. ¶ 13. As a Counter-Protester, Mr. Snow walked among the Protesters carrying a large flag that read

"TRUMP: Make America Great Again." Id. ¶ 14. Despite the Protester's requests, JSO did not remove Mr. Snow from the Protester's group. Id. ¶ 15.

At approximately 6:15 p.m., Plaintiff arrived at Hemming Park and joined the Protesters on the stage. Id. ¶ 16. Using a microphone, Plaintiff spoke about the United States' involvement in African and Latin countries and racial profiling within the United States. Id. Plaintiff criticized JSO's treatment of African-Americans and shouted "f**k the police" to the crowd. Id. ¶ 17. After Plaintiff's speech, several onlookers at the protest overheard a JSO officer tell the other officers, "I'm gonna deck that guy in the face before the night is over." Id. ¶ 18.

During Plaintiff's speech, Mr. Snow stepped onto the stage and harassed the Protesters by shouting into his own microphone. See id. ¶ 19. The Protesters ignored Mr. Snow and began a chant urging the United States to leave the Middle East. Id. ¶ 20. Mr. Snow then initiated an argument with a Protester behind the stage. Id. ¶ 21. Plaintiff stepped off of the stage, placed himself between Mr. Snow and the other Protester, and stretched his arms out to prevent a physical altercation between Mr. Snow and the other Protester. See id. ¶ 22. Mr. Snow quickly turned and moved toward another Protester who was Plaintiff's friend. Id. ¶ 23. In response, Plaintiff again placed himself between Mr. Snow and Plaintiff's Protester-friend. Id. ¶ 24. Defendant Plaugher then stepped between Plaintiff and Mr. Snow. Id. ¶ 25. Mr. Snow swung his arm over Defendant Plaugher's shoulder, pushed his hand in front of Plaintiff's face, and stuck up his middle finger. Id. ¶ 26.

Defendant Plaugher, McEwan, and Jester grabbed Plaintiff from behind. Id. ¶ 27. Defendant Plaugher ordered Plaintiff to stop resisting, stop fighting, and to put his hands

behind his back. See id. ¶ 28. Plaintiff complied with the commands. Id. ¶ 29. An onlooker who knew Plaintiff yelled to the officers to let Plaintiff go and that Plaintiff was deaf. Id. ¶ 30. Despite this information, Plaintiff was thrown to the ground. See id. Defendant McEwan punched Plaintiff in the face and then repeatedly punched him in the back, stomach, and ribs while Defendants Plaugher and Jester held Plaintiff down on the ground. Id. ¶¶ 31, 32. During the encounter, Mr. Snow stood over Plaintiff and the officers and filmed the incident on his camera-phone. Id. ¶ 39. Defendant McEwan also pressed a taser to Plaintiff's back and pulled the trigger. See id. ¶ 33. Plaintiff was dragged to Defendant Wise's patrol car where Defendant Wise placed Plaintiff under arrest for inciting a riot and resisting arrest. Id. ¶¶ 34, 35. During the incident, Plaintiff lost consciousness and had to be taken to the hospital for treatment. See id. ¶ 36.

In Count V, Plaintiff asserts that he engaged in constitutionally protected speech by speaking about the United States' involvement in Syria and JSO's treatment of African-Americans and by shouting "f**k the police." Id. ¶ 72. Plaintiff claims that Defendant Wise retaliated against him by arresting him and Defendants Plaugher and McEwan retaliated against him by holding Plaintiff down and beating him. See id. ¶ 73.[2] Plaintiff alleges that his protected speech was made moments before the arrest occurred and thus directly caused Defendants' conduct. See id. ¶ 74.

---

[2] Plaintiff also includes Defendant Jester in the allegation at paragraph 73 but does not include Defendant Jester in the naming of Count V or the Wherefore Clause demanding judgment. See Compl. ¶ 73, Wherefore Clause. For purposes of this Order, Count V is brought against Defendants McEwan, Plaugher, and Wise only and not Defendant Jester.

III. Discussion

### a. Qualified Immunity for Plaintiff's § 1983 First Amendment Retaliation Claim (Count V)

Defendants McEwan, Plaugher, and Wise ("Defendants") move to dismiss Count V of the Complaint—a § 1983 claim for First Amendment retaliation—on the basis of qualified immunity. Motion at 2-3, 6-9. "Qualified immunity provides 'immunity from suit rather than a mere defense to liability.'" Wall-DeSousa, 691 F. App'x at 589 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "To overcome qualified immunity at the motion-to-dismiss stage, the plaintiff must plead sufficient facts to allege that: (1) the defendant violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation." Wall-DeSousa, 691 F. App'x at 589 (internal citations omitted). The Court's analysis is limited to "'the facts and the law present at the time that public officials make their decisions and does not take into account later facts or changes in the law.'" Id. (quoting Jackson v. Humphrey, 776 F.3d 1232, 1242 (11th Cir. 2015)).

Plaintiff claims that Defendants retaliated against him for exercising his First Amendment rights during the protest. See Compl. ¶¶ 72-74. To state a claim for retaliation, a plaintiff must establish the following elements: (1) that his or her "speech or act was constitutionally protected;" (2) "that the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (citing Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005); Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002)).

Defendants concede and the Court agrees that Plaintiff's speech regarding the United States' involvement in African and Latin countries, racial profiling within the United

States, JSO's treatment of African-Americans, and shouting "f**k the police" to the crowd was constitutionally protected speech. See Motion at 2-3; see also Andrews v. Scott, 729 F. App'x 804, 811 (11th Cir. 2018) ("The First Amendment 'protects a significant amount of verbal criticism and challenge directed at police officers.'" (quoting City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987)) (unpublished). The Court also finds that Defendants' use of force or Plaintiff's arrest adversely affected his protected speech. See e.g., Bennett, 423 F.3d at 1254 ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."); see also Andrews, 729 F. App'x at 812 (affirming the district court's denial of a motion to dismiss a First Amendment retaliation claim and finding that "it is obvious that when [the plaintiff] was arrested, her protected speech was adversely affected . . . [and] even the threat of arrest would likely deter a person of ordinary firmness from the exercise of First Amendment rights, at least to some degree.").

Regarding the third element requiring a causal connection, which is at issue in the Motion, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." Castle v. Appalachian Tech. Coll., 631 F.3d 1194, 1197 (11th Cir. 2011) (citing Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). Whether the protected speech was a motivating factor behind the conduct "requires that the defendants had actual knowledge of the plaintiffs' protected speech, which 'can be established by circumstantial evidence.'" Wall-DeSousa, 691 F. App'x at 591 (quoting Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000)). The Court may also consider close temporal proximity between the protected speech and the alleged retaliatory conduct. See Brungart, 231 F.3d at 799 ("The general

rule is that close temporal proximity between the [ ] protected conduct and the adverse [ ] action is sufficient circumstantial evidence . . . ."); see also Bumpus v. Watts, 448 F. App'x 3, 7 (11th Cir. 2011) (finding that the district court erred in prematurely dismissing the plaintiff's First Amendment retaliation claim "given the short amount of time between his appeal of the disciplinary decision and the alleged retaliatory actions."); Akins v. Fulton Cty., Ga., 420 F.3d 1293, 1305 (11th Cir. 2005) ("This close temporal proximity between the meeting and [the defendant's] actions suggest a causal relationship . . . [and] [b]ased on this relationship, a reasonable factfinder could conclude that [the defendant] took these actions on account of [the] [p]laintiffs' speech."). However, "mere temporal proximity, without more, must be 'very close.'" Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (discussing the standard for retaliation under Title VII). "[O]nce the plaintiff shows that her protected conduct was a motivating factor, the burden shifts to the defendant to show that she would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable." Castle, 631 F.3d at 1197.

Defendants argue that Plaintiff's allegations in Count V do not establish a causal connection between Plaintiff's protected speech and Defendants' conduct. See Motion at 6-9. More specifically, Defendants contend that Plaintiff fails to establish Defendants' subjective knowledge of Plaintiff's speech. See id. Defendants also contend that the Complaint is "devoid of any direct evidence" that Defendants' conduct was directly caused by the protected speech. See id. at 8. Defendants argue that the Complaint fails to allege the following information: that Defendants heard Plaintiff's speech; how close to the stage Defendants were standing when Plaintiff made his speech; which officer said that he was

going to "deck" Plaintiff in the face before the night was over; or which onlooker in the crowd overhead the officer make the statement about decking Plaintiff in the fact. See id. at 7.

To defeat the Motion, Plaintiff argues that he pled in the Complaint that his protected speech "made moments before the arrest occurred, directly caused Defendants' conduct." See Opp. at 5-6 (citing Compl. ¶ 74).³ Plaintiff argues that the close temporal proximity states a plausible causal connection between the speech and Defendants' conduct. See Opp. at 6. Plaintiff also argues that Defendants' knowledge is supported by the following allegations: Defendants were dispatched to Hemming Park to ensure a peaceful protest; Plaintiff spoke into a microphone while standing on a stage; the protest was relatively small with approximately 30 to 40 people in total; and Plaintiff was arrested for inciting a riot. See id. at 6 (citing Compl. ¶¶ 12, 16, 35).

The allegations in the Complaint support that there is a causal connection between Defendants' conduct and the adverse effect on the protected speech in that Plaintiff was beaten and arrested moments after making the speech. See Compl. ¶¶ 12, 16, 20-35, 74. Additionally, Defendants did not arrest the Counter-Protester, Mr. Snow, who carried a large Trump flag among the protesters, interrupted and harassed the Protesters, and swung his arm over Defendant Plaugher's shoulder to stick his middle finger up in front of Plaintiff's face. See id. ¶¶ 13-14, 19-27, 38-41. Considering the close temporal proximity of the speech, the beating, and the arrest, coupled with the lack of law enforcement action against Mr. Snow, the microphone used for Plaintiff's speech while

---

³ In full, paragraph 74 of the Complaint states the following: "Plaintiff's critical speech of JSO, made moments before the arrest occurred, directly caused Defendants' conduct."

he stood on a stage, that Defendants were patrolling Hemming Park for the purpose of ensuring a peaceful protest, and that an officer stated that he planned to "deck" Plaintiff in the face, suggest that Defendants had subjective knowledge of Plaintiff's speech. Taking the allegations in the Complaint as true and construing them in favor of Plaintiff, the Court finds that Plaintiff stated a claim for § 1983 First Amendment retaliation. Plaintiff has stated that a constitutional violation occurred to defeat Defendants' qualified immunity at this early stage in the proceeding.

### b. Probable Cause or Arguable Probable Cause for Plaintiff's Arrest

Additionally, Defendants argue that Plaintiff's retaliation claim against Defendant Wise, who arrested Plaintiff, must be dismissed because Defendant Wise had probable cause or arguable probable cause to make the arrest. See Motion at 8-9. "When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested." Redd v. City of Enter., 140 F.3d 1378, 1383 (11th Cir. 1998). Indeed, "the existence of probable cause at the time of arrest 'is an absolute bar to a subsequent constitutional challenge to the arrest.'" Andrews, 729 F. App'x at 808 (quoting Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010)). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Brown, 608 F.3d at 734 (internal citations omitted). "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Id. (internal citations omitted). "Arguable probable cause exists where reasonable officers in the same

circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest [p]laintiff." Id. (internal quotations and citations omitted).

Defendant Wise arrested Plaintiff for inciting a riot and resisting arrest. See Compl. ¶ 35. Section 870.01(2), Florida Statutes, states that "[a]ll persons guilty of a riot, or of inciting or encouraging a riot, shall be guilty of a felony of the third degree . . . ." To incite a riot, "the words used must be such that they advocate violence and tend to incite an immediate breach of the peace." State v. Beasley, 317 So. 2d 750, 753 (Fla. 1975). However, the Complaint alleges that during his speech "Plaintiff did not advocate violence or single out any police officers or other individuals in the crowd." Compl. ¶ 17. The Complaint is also devoid of allegations to support that Plaintiff's words sought to advocate violence during the protest or that Plaintiff targeted individual police officers during his speech for purposes of inciting violence on them or other individuals in the crowd.

Plaintiff was also arrested for resisting arrest. Id. ¶ 35. The Complaint alleges that Plaintiff complied with Defendants' commands during the arrest. See id. ¶¶ 28-34. Notably, Plaintiff was "dragged" to Defendant Wise's patrol car to be placed under arrest after he was punched in the face, stomach, back, and ribs, and after he was tasered. See id. It is unclear from the Complaint when during the beating and arrest Plaintiff became unconscious but ultimately Plaintiff had to be taken to the hospital for treatment. See id. ¶ 36. Under this framework and again taking the allegations in the Complaint as true, the Court cannot find as a matter of law that Defendant Wise had probable cause or arguable probable cause to arrest Plaintiff for either offense.

Accordingly, after due consideration, it is

**ORDERED:**

Defendants Wise, Plaugher, and McEwan's Motion to Dismiss Count V of the Complaint with Prejudice with Memorandum of Law (Doc. 10) is **DENIED**.

**DONE** and **ORDERED** in Jacksonville, Florida this 6th day of February, 2019.

*[signature]*
BRIAN J. DAVIS
United States District Judge

5
Copies furnished to:

Counsel of Record